UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Bankruptcy No. 18-30752 |
| William Kenneth Reimer, | Chapter 7 |
| Debtor. / | |
| Security First Bank of North Dakota, | |
| Plaintiff, | |
| vs. | Adversary No. 19-07070 |
| William Kenneth Reimer, | |
| Defendant. / | |

**MEMORANDUM AND ORDER**

Plaintiff Security First Bank of North Dakota filed a Complaint on April 9, 2019, alleging Defendant/Debtor William Kenneth Reimer willfully and maliciously converted Security First's collateral. Doc. 1 at ¶ 23. Security First seeks a determination that the debt owed to it by Debtor is nondischargeable under 11 U.S.C. § 523(a)(6). Id. at ¶ 28. Debtor filed an Answer on May 2, 2019, denying the allegations. Doc. 4.

Debtor filed a motion for summary judgment. Doc. 16. He asserts that Security First failed to produce evidence of a willful and malicious injury caused by Debtor. Id. For the reasons that follow, Debtor's motion for summary judgment is DENIED.

**I.    BACKGROUND**

Debtor previously owned R & R Contracting, Inc., a business specializing in railroad maintenance. Doc. 1 at 2. R & R executed various promissory notes promising to repay

1

a debt to Security First and signed a security agreement granting the bank an interest in its property. Debtor personally guaranteed the debts to Security First. Id. Security First's collateral includes R & R's inventory, accounts, accounts receivable, general intangibles, all business assets and equipment. Id. Security First recorded financing statements to perfect its interests in the collateral. Id. at 3.

Security First and R & R agreed to liquidate the collateral and apply the proceeds toward R & R's debt. Id. Debtor oversaw and controlled the various items of collateral. Id. He retained several items of collateral and transferred others to third parties rather than tender all of them for sale at auction. Id. Security First identified 12 specific pieces of property that Debtor retained or transferred to third parties. Id. at 3-4. The third-party transferees include Allrail Services, LLC, a company owned by Debtor's wife.

Of the 12 pieces of property, Security First recovered six of them after it initiated this adversary proceeding. Doc. 17-1. Security First also alleges Debtor prevented Security First from recovering another piece of property, a locomotive, until after it filed this adversary proceeding. It claims that Debtor diverted proceeds from the lease of this locomotive to Allrail, a company owned by Debtor's wife. Security First has not repossessed the locomotive because it is no longer in working order. Id. Security First claims Debtor refused to disclose the location of two tampers and a GMC Sierra pickup. Debtor claims he does not know the location of two trailers. Id.

Mitch Nelson, Security First's SVP and Chief Credit Officer, testified by affidavit that R & R's former employee, Jeff Schake, "will testify as to how Reimer knowingly disposed of certain items of the bank's collateral and took attempts to deceive the bank as to the whereabouts of its collateral." Doc. 17-1 at ¶ 3.

Debtor filed a voluntary Chapter 7 bankruptcy petition on December 21, 2018.

2

Debtor listed Allrail as a creditor in his bankruptcy schedules. Doc. 69 at 11 (#18-30752). Specifically, Debtor indicated that Allrail owes him $24,000 for the "purchase of a tamper at auction." Id.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial responsibility of identifying pleadings, discovery, testimony and other evidence which it believes demonstrate "the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. The moving party satisfies this burden by showing "an absence of evidence to support the nonmoving party's case." Id. at 325. When the moving party has met its burden, the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (citing Fed. R. Civ. P. 56). The Court views the record in the light most favorable to the nonmoving party and must afford that party all reasonable inferences. Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (citing Liberty Lobby, Inc., 477 U.S. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

### B. 11 U.S.C. § 523(a)(6)

Debtor asserts that he is entitled to judgment as a matter of law because Security First has not offered evidence supporting its allegations that Debtor willfully and

3

maliciously injured Security First under section 523(a)(6).  Doc. 16.

Section 523(a)(6) provides in relevant part: "A discharge . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or the property of another entity."  "Section 523(a)(6) first requires the court to determine 'exactly what injury the debt is for.'"  One Am. Bank v. Jacobson (In re Jacobson), 532 B.R. 742, 746 (Bankr. N.D. Iowa 2015) (quoting Patch, 526 F.3d at 1181).  Next, the court must determine whether the debtor willfully and maliciously caused the injury.  Id.

In the Eighth Circuit, the terms "willful" and "malicious" are distinct elements, and a creditor seeking to establish an exception to discharge must show each element.  Dering Pierson Grp., LLC v. Kantos (In re Kantos for Cash Flow Mgmt., Inc.), 579 B.R. 846, 851 (B.A.P. 8th Cir. 2018) (citing Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 641 (8th Cir. 1999)).  The Bankruptcy Appellate Panel for the Eighth Circuit most recently explained the distinction between the terms "willful" and "malicious" in In re Kantos:

> The Supreme Court addressed the term "willful" for purposes of § 523(a)(6) and concluded that the word "willful" modifies the word "injury". This indicates that the exception to discharge requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The category of injury that the Supreme Court envisioned was that of an intentional tort. "[T]he (a)(6) formulation triggers . . . the category of intentional torts, as distinguished from negligent or reckless torts." Geiger, 523 U.S. at 62, 118 S.Ct. 974; affirming the Eighth Circuit in Geiger v. Kawaauhau (In re Geiger), 113 F.3d 848, 852 (8th Cir. 1997) (en banc). Intentional torts generally require that the actor intend the "consequences of an act, and not just the act itself." Restatement (Second) of Torts § 8A cmt. a.
>
> The Supreme Court did not address the meaning of malicious in Geiger. Allstate Insurance v. Dziuk (In re Dziuk), 218 B.R. 485 (Bankr. D. Minn. 1998). In the Eighth Circuit, an injury is malicious when the debtor intended to harm the creditor at least in the sense that the debtor's tortious conduct was certain or almost certain to cause harm. Waugh v. Eldridge (In

4

re Waugh), 95 F.3d 706, 711 (8th Cir. 1996); Johnson v. Miera (In re Miera), 926 F.2d 741, 743 (8th Cir. 1991). Intentional harm is difficult to establish, but the likelihood of harm in an objective sense may be considered in evaluating intent. Barclays American Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 881 (8th Cir. 1985). The mere violation of legal rights is not enough to show malice "absent some additional aggravated circumstances". Id. "The malice standard does not require spite, ill will, or a personal animosity." See e.g., In re Fors, 259 B.R. 131, 137 (8th Cir. BAP 2001). To qualify as "malicious," a debtor's actions must be "targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause financial harm." See In re Madsen, 195 F.3d 988, 989 (8th Cir. 1999); Long, 774 F.2d at 881.

In sum, the debtor must have intended the injury to the creditor (willful) and the conduct must have been targeted at the creditor (malicious). In re Dziuk, 218 B.R. at 487. The willful element is satisfied if the injury is the result of an intentional tort. The malicious element is satisfied if, in committing the intentional tort, the perpetrator intended the resulting harm, or the harm was substantially certain or nearly certain to result. See Waugh, 95 F.3d at 711; Long, 774 F.2d at 881.

579 B.R. at 851.

In its Complaint, Security First alleges Debtor willfully and maliciously harmed it by converting 12 separate pieces of equipment. In his motion for summary judgment, Debtor addresses the circumstances related to each individual piece of equipment.[1] Although Debtor's arguments are not identical for each piece of equipment, he claims Security First has not offered evidence sufficient to show that he possessed custody, control or

---

[1] Debtor suggests that the Court should consider isolated facts related to each piece of equipment. Instead, the Court will consider Debtor's conduct and intent – and any other relevant fact in the totality of circumstances – in determining whether Security First established that Debtor willfully and maliciously injured it. See Berman v. Leary (In re Leary), 601 B.R. 307, 317 (Bankr. D. Conn. 2019) (stating that a party may prove the willful and malicious nature of an injury under section 523(a)(6) from all the facts and circumstances.); Guo Zhong Wu v. Qiao Lin (In re Qiao Lin), 576 B.R. 32, 43 (Bankr. E.D.N.Y. 2017) (stating that a court should look to the totality of the circumstances to determine whether section 523(a)(6) is met). The Court will address each of Debtor's arguments – many of which apply to multiple pieces of property – but will ultimately consider all the facts related to all the equipment, as opposed to the item-by-item approach Debtor applied, in determining whether section 523(a)(6) is met.

5

possession of any of the 12 pieces of equipment Security First alleges Debtor converted.

Security First obtained a legal interest in the collateral pledged by R&R in the security agreement. In its Complaint, Security First "demands the return of its collateral, the deprivation of which has impaired Security First from recovering from its secured interests." Doc. 1 at 5. Security First maintains Debtor is responsible for this deprivation. In Defendant's Brief in Support of Motion for Summary Judgment, Debtor argues Security First provided no evidence Debtor actually exercised custody or control over the payloader, five trailers, tractor or locomotive. Debtor also argues that Security First's unsubstantiated "belief" that Debtor retained possession of a GMC Sierra 1500 pickup and two tampers is not sufficient to show conversion. Debtor did not point to pleadings or offer evidence showing an absence of a genuine issue of fact on these issues. For example, he did not testify or offer evidence showing that he did not possess or exercise custody or control over the machinery, equipment or truck. Conversely, in its Complaint, affidavit and interrogatory answers, Security First claims Debtor willfully and maliciously converted the machinery, equipment, truck and locomotive. It pointed to facts showing or suggesting that Debtor arranged for the transfer of some of the machinery and equipment to Allrail, his wife's business; Debtor claimed he owned one of the tampers; and he attempted to sell some of the machinery, equipment and/or tools. Security First also asserts that all the assets were "in control of defendant either at All Rail, his prior business location of R&R Contracting, or his lake home in Minnesota." See Doc. 16. This evidence is sufficient to withstand summary judgment on this issue.

Alternatively, Debtor argues that, even if Security First has offered evidence sufficient to establish custody, control and possession sufficient to withstand summary judgment, "'[a] mere technical conversion or simple interference with a creditor's legal

6

rights, however, is not, in and of itself, enough to prevent the discharge of a particular debt.'" Doc. 16 at 9 (citing First Nat'l Bank of McClusky v. Zinke (In re Zinke), 174 B.R. 1017, 1022 (Bankr. D.N.D. 1994). In the affidavit it offered and interrogatory answers included in the record, Security First lists conduct it claims shows willful and malicious injury, including Debtor's refusal to disclose the location of the machinery and equipment; the transfer of some of R&R's equipment to Allrail; and his attempts to sell equipment without coordinating with Security First. Viewing the record in the light most favorable to Security First and affording it all reasonable inferences, the Court finds that this evidence is sufficient to withstand summary judgment on the issue of whether Debtor acted willfully and maliciously.

As to the six pieces of equipment Security First recovered after it filed its Complaint, Debtor asserts that Security First cannot prove Debtor willfully and maliciously converted this machinery and equipment because Security First recovered possession of them. Under section 523(a)(6), the issue is whether Debtor willfully and maliciously injured Security First, not whether he willfully and maliciously converted collateral. Although not expressly characterized as such, Debtor's argument relates to whether Security First suffered an injury, a threshold issue under section 523(a)(6). See Glob. Control Sys., Inc. v. Luebbert (In re Luebbert), 595 B.R. 314, 330 (Bankr. W.D. Mo. 2018) (stating that before the court could reach the willful and malicious elements, it had to address the threshold issue of whether the plaintiff suffered an injury). "An 'injury' is defined as 'the invasion of any legally protected interest of another.'" In re Jacobson, 532 B.R. at 746 (quoting Farmers State Bank v. Devries (In re Devries), 2012 WL 528223, at *6 (Bankr. N.D. Iowa Feb. 17, 2012)).

After Security First filed this adversary proceeding, Debtor returned six of the pieces

7

of property at issue and provided the location of a seventh, a locomotive. Debtor's return of the property, however, does not extinguish all forms of injury possibly caused by the deprivation and it does not prevent the Court from considering Debtor's conduct in deciding whether Debtor willfully and maliciously harmed Security First. Security First offered the Affidavit of Mitch Nelson, in which Nelson testified that Debtor willfully and maliciously withheld the six pieces of equipment it recovered until after Security First filed this adversary action, suggesting Security First was harmed by the delay in recovery. In interrogatory answers, Security First also maintains it was burdened with the expense of searching for and repossessing this machinery and equipment because Debtor initially refused to cooperate in the asset recovery. In its interrogatory answers, Security First also claims Debtor left the 2013 Cargo South Enclosed Trailer, 2002 Continental Cargo Forest River Bumper Hitch Trailer, a 1987 Eaglerock Trailer, 1990 Redi-Built Trailer, a 2012 Kubota Tractor and a Case Payloader (which it alleges is among the equipment Debtor oversaw and controlled) exposed to the weather, accelerating depreciation.[2] Doc. 16 at 43-46. While Debtor's return of the equipment may affect the measure of damages at

---

[2] Debtor argues that any damage to the equipment caused by weather exposure is not a willful and malicious injury and that he is entitled to judgment as a matter of law related to several of the pieces of property on this basis. Debtor cites First Nat'l Bank of Cent. Jersey v. Maiolo (In re Maiolo), 12 B.R. 114 (Bankr. N.D. Ga. 1981) as support for this proposition. The court in In re Maiolo did not conclude, as a matter of law, that damage caused by weather exposure may not support a finding of willful and malicious injury. Rather, the court found that the debtor's failure to keep a vehicle insured and in good repair did not constitute a willful and malicious injury under the circumstances of the case as established by the evidence at trial. Id. at 116. As with all cases under section 523(a)(6), the outcome hinges on whether Debtor's conduct related to any damage caused by weather exposure was negligent or reckless or willful and malicious which requires consideration of the facts to be established at trial. See Luebbert, 595 B.R. at 333 ("Courts hold that circumstances are sufficiently aggravating to support a finding of malice is a fact-specific determination made on a case-by-case basis, looking at the totality of the circumstances.") Debtor is not entitled to judgment as a matter of law on this basis.

trial,[3] Security First offered evidence sufficient to create a material question of fact on the issues of injury and willful and malicious intent.

Debtor also argues that Security First lacks a security interest in a pickup, and consequently, he cannot be guilty of conversion of the pickup. In its answers to interrogatories, Security First maintains it has a security interest in the pickup. Whether a security interest exists is generally considered a question of fact because the intent of the parties determines the existence and nature of a security interest. Rice v. Citizens First Bank of Fordyce (In re Cheqnet Sys., Inc.), 227 B.R. 166, 168 (Bankr. E.D. Ark. 1998). Because the parties dispute this question of material fact, summary judgment is inappropriate.

---

[3] See PNC Bank, N.A. v. Nix (In re Nix), 2018 WL 3339620, at *9 (Bankr. N.D. Ala. July 6, 2018) (determining the sum of a nondischargeable obligation in a case involving the willful and malicious conversion of collateral to be the unrecovered balance of a creditor's claim plus interest and late charges); Veridian Credit Union v. Lampe (In re Lampe), 2017 WL 6568050, at *5 (Bankr. N.D. Iowa Dec. 22, 2017) (stating that damages in a section 523(a)(6) action are measured "'by the extent to which [the lender] would have had value in the collateral to recover its debts, but for the Debtor's willful and malicious conduct causing a reduction in its value.'") (quoting Bank of Iberia v. Jeffries (In re Jeffries), 378 B.R. 248, 256 (Bankr. W.D. Mo. 2007); Trustmark Nat'l Bank v. Jenkins (In re Jenkins), 2016 WL 3574081, at *6 (Bankr. S.D. Miss. June 23, 2016) (finding that the appropriate measure of damages in a section 523(a)(6) case is "'an amount equal to the injury caused by the debtor rather than any other sum owed by the debtor on a contractual basis.'") (quoting Friendly Fin. Serv. Mid-City, Inc. v. Modicue (In re Modicue), 926 F.2d 452 (5th Cir. 1991)).

## III. Conclusion

The Court finds there are genuine disputes of material fact regarding whether Debtor willfully and maliciously injured Security First. Therefore, **IT IS ORDERED** that Debtor's Motion for Summary Judgment is **DENIED**.

Dated this January 15, 2020.

*/s/ Shon Hastings*

SHON HASTINGS, JUDGE
U.S. BANKRUPTCY COURT